Good morning. May it please the court, my name is David Schlesinger and I represent the appellant, Gerald Bridge Johnson. In his first amended habeas petition, filed in the district court per se, Mr. Johnson alleged that his state-appointed public defender, Trey Simucuga, on three separate occasions promised him, and the three separate occasions were on the day of his plea hearing, just before, during the plea hearing itself, and at his sentencing hearing, that Johnson, if he were to plead guilty, would receive no fewer than four years in prison. Counsel, tell me if I've got this right. His claim is ineffective assistance because his lawyer told him he'd get four and he actually got ten. But it looked to me like the judge told him he was liable to get up to ten and it's 2254, so we have to defer under the 2254 standards to the California Court of Appeal, which, and I don't see that they made an unreasonable determination of the facts in view of those facts, of what I just mentioned. Let me make a couple of points. What am I missing? What I think you're missing, Your Honor, is that Blackledge, Supreme Court's opinion, Blackledge v. Allison, creates this entirely separate issue regarding whether the district court had erred in not giving him an evidentiary hearing based on the allegations set forth in the ---- But you have to have something that requires resolving. And what requires resolving? I mean, there's no declaration from counsel. There's a crystal clear record of the plea and the unsworn declarations. So what would happen at an evidentiary hearing? What would it be for? The evidentiary hearing, Your Honor, would be for the purpose of resolving the different accounts. Presumably, we don't know what Ms. McCougar's account would be. Well, that's just the point. I mean, you and I could go to the moon this afternoon, too. I mean, it's possible. But you have to make these decisions based upon a record. And the record here is pretty much, I think, as I just described it. Your Honor, I would think that Blackledge requires much more of a district court. In Blackledge itself, you had basically the petitioner's allegations set forth in his habeas petition as apparently contradicted by the record in that case. Here, you have essentially the same situation. You do have a trial court, a sentencing court record. But you also have Mr. Johnson's, at this point, completely uncontroverted allegations about what Ms. McCougar told him. You have a couple of sentences that are in the petition, but you don't have any collaboration for his statements in his memo of points and authorities in the State court that were sworn, and you have no collaboration. So what would have happened if we had an evidentiary hearing today, right here, right now? What would happen? Well, what would happen is you would have presumably there would be a discovery that would take place before that hearing that would try to inquire into the circumstances that led, as Mr. Johnson alleged, Ms. McCougar to make these explicit promises to him. I should also note, Your Honor, that Mr. Johnson in his State ---- Where's the evidence of the promises? The State superior court says the record does not substantiate the claim that he had a plea bargain for four. And it says no promises were made that this would be the sentence. Where's the evidence of the promises? The evidence of promises at this point, Your Honor, is just in Mr. Johnson's allegations. And I should note that also in the record ---- Well, that's not cognizable evidence because it's not sworn. Well, it is sworn under penalty of perjury in the State habeas proceeding. Oh, it is? I missed it. Show me. I'm sorry, Your Honor. I missed where it was sworn. Just show me in here. Let me see if I can very quickly turn to the portion of the State proceedings in which you can see that it's sworn under penalty of perjury. I'll give you an example. You'll tell us which habeas we're talking about, too. He filed four of them. He did file multiple ones. They all had basically generic forms, knowing that they were under ---- Thank you. Okay. One example would be ER-247, Your Honor. Thank you for indulging me. On the bottom of the page, it says it is sworn under penalty of perjury. That's the form, yes? What's that? That's the form. I don't happen to have a copy of that one in front of me. But that's the form. That is the form, Your Honor. Okay. But the form just has essentially bare-bone allegation. He annexed to the form, Your Honor, a handwritten memorandum. So you're saying annexing the handwritten memo brings it also within the penalty of perjury? I would think so. We are dealing with an unsophisticated individual here who is not really trained in the niceties of legal pleading. And so I think given that Blackledge and any opinions from this Court talk about how pro se allegations need to be construed liberally, that that was a properly, I guess you could say, notarized statement. I should note also, Your Honor, that there are many instances in the record, including in the first habeas, First Amendment habeas petition, various habeas petitions filed before the California courts where Mr. Johnson submits a copy of a letter that he submits to Ms. McHoover. I believe it was written sometime in late 2001 in which he sought to get some kind of affidavit or declaration from Ms. McHoover regarding his version of the events. I don't believe that Ms. McHoover ever responded to it. That cuts the other way, if anything. His first habeas only talked about didn't talk anything, say anything about it. He said his first habeas petition. He said it. I'm sorry. His First Amendment habeas petition before the district court. He didn't, he. I'm thinking about the, this is a 2254, right? That's correct, Your Honor. What did he put in front of the California courts is the question. His first habeas in the California court didn't say anything about it at all. Nor did his second habeas in the California court. His, I believe it was his third. To the extent that you're talking about the post-sentencing proceedings in the California court, the first time he made these allegations other than on direct appeal was in his third petition to the Superior Court. The fourth petition to the Superior Court. Then he also made the allegations to the California court of appeal and to the California Supreme Court. And I should note that the State has not contested that Mr. Johnson has failed to exhaust this claim. So he has properly raised this claim for the purposes of the 2254 proceeding. Is the district court right in its quotation of the transcript of his change of plea hearing that the judge made it clear, I think that when he changed his plea, the judge said one possibility was three years, eight months at half time, but don't get your guesswork wrong. And then he told them his max was 53 years and ascertained that he had no deal. Why isn't that the end of it? It isn't in the end of it, Your Honor, because later in that same hearing, Ms. Mukuba said to Mr. Johnson, according to Mr. Johnson's allegations, that that meant nothing and that the half-time deal was still yours. I don't know if that's the verbatim quotation I can give you. Any indication of when that alleged conversation allegedly took place? I think if you consider Mr. Johnson's pleadings broadly, as you're required to, that conversation took place during the actual colloquy. There's just nothing that says that. How are we supposed to know that? I mean, even if we indulge the assumption that this stuff was under oath, there's no statement there that as to when that conversation occurred. It could have occurred long after the colloquy, just as logically. Again, Your Honor, I think that to the extent that we're engaging in those kinds of parts of that kind of extreme parsing of the record, I think that that, under blackledge, under decisions from this Court, that is an issue that a finer fact in this case the district court would have to make. I understand that. And I should note, just before I wrap up and reserve time for rebuttal, I should note that blackledge itself said that these allegations, as long as they're not patently false, frivolous, palpably incredible, should be enough to require an evidentiary hearing to be held. And I'll reserve my remaining time for rebuttal. Thank you. Mr. Viena? Good morning, Your Honor. Nick Blizzard, Court. I'm Kevin Viena. I'm the Deputy Attorney General with the California Department of Justice, appearing for Respondent Kelly in this matter. The Court asked, perhaps, the critical question, what would happen if this case were remanded for an evidentiary hearing? And the answer is there could be no chance of a change in outcome. And the reason there couldn't be a chance of a change in outcome is because the record does make clear that Mr. Johnson's claims are obviously incredible on their face from a couple of instances that seem to be dispositive. First, on the plea form, he acknowledged there were no deals. Second, after he was sentenced to ten years and four months, he spoke with the trial court and said, I hope to use this ten years to improve myself. Third, defense counsel, invoking her or applying her ethical responsibilities, told the trial court there were no deals. So we would have to have perjury or near perjury from both the defense counsel and Mr. Johnson to the trial court in order to get to the point of Mr. Johnson's belated expression that he was promised by defense counsel that he would not get the very sentence that the trial court told him he was likely to get. A couple of other points, if I may. You happen to have your excerpt sites on this? I don't want you to take a lot of time, but if you have them. Each one of them is in my brief, Your Honor. Each page site is in my brief. I could get to them in a moment, I suppose. If I could add, opposing counsel's argument takes the form of saying that in Blackledge, if there is a claim, there must be a hearing. But Blackledge doesn't reach that conclusion at all. Importantly in Blackledge, the procedure was a good deal different in North Carolina at that time. There was essentially no record other than a plea form. And Blackledge points out that in Blackledge, the majority opinion points out that the procedures had changed in North Carolina after that plea form or after the plea in which the plea that was challenged. That is, there would be a transcript, verbatim transcript, and there would be statements from the trial court and prosecutor and defense counsel. All of those things occurred in this case. One other matter. That is, as this Court observed as well, the magistrate judge in a very thorough decision, which quite liberally construed all of Mr. Johnson's claims. Blackledge, the procedure used to be, before, as I remember from practice, it was in the mid-70s, that everybody pretended there were no plea bargains. So they weren't talked about in court. And the way I remember it, the procedure changed when Blackledge said, no, talk about them, make them explicit, if there's some kind of deal. And then everybody did. Have I got that right? Precisely, Your Honor. Although it appears that that change had occurred before the opinion was written in Blackledge. That is, those are many corrections that have been made to the North Carolina procedure. Blackledge emphasizes the importance of finality in plea bargains and further emphasizes that the hidden plea bargain should be gone and that the end of the hidden plea bargain should resolve the problems that arose in Blackledge. And that's precisely what happened here. Finally, returning, my final point would be to return to the AEDPA standard. The two courts in the state, the two state courts that addressed, with some discussion, his ineffective assistance of counsel claim. The Superior Court said that his claims were essentially unsupported. The Superior Court cited In re Alvarez for the proposition that his uncorroborated self-serving statements could not prevail, could not overcome the presumption of attorney performance that applies in Strickland. The Court of Appeal also said that he had failed to set out, he had failed to make his case for ineffective assistance of counsel. He would have to overcome those decisions. He would have to overcome the implicit fact-finding in those decisions by clear and convincing evidence. And based on the record that's before the Court now, that makes it clear that what we have is a resurrected and improper memory by Mr. Johnson. He could not meet that burden. Those are the points I hope to make this morning. If there are no other questions from the Court, I'll submit. Thank you. Thank you, Your Honor. Thank you, counsel. Mr. Schlesinger. I'll just quickly make a couple of points, Your Honor. With regard to Blackledge, I believe that the procedures or the limitations that Mr. Viano alluded to in Blackledge, we're talking about an victim in a, I think it was a footnote 17 or footnote 18. And even to the extent that you take that as a holding, the, one of the prongs that the Court had set forth for accepting a limitation of Blackledge was not met here, which was that Mr. Johnson needed to be counseled that the plea bargain, that it was okay to talk about any promises that may have been made in the plea bargain proceeding. Counsel, I don't understand the use of Blackledge. I'm looking at the holding at 63, or I think it's part of the holding, where it says neither lawyer was asked to disclose any agreement that had been reached or sentencing recommendation that had been promised. The process did nothing to dispel a defendant's belief that a bargain struck must remain concealed, a belief reinforced by the admonition of Allison's lawyer that disclosure could jeopardize the agreement. I don't understand where Blackledge has anything to do with this, with this case, since in this case there was expressed discussion of whatever plea agreement there might be. And the parties denied there was one. Why does Blackledge say anything about what we should do in this case? A couple quick points, Your Honor. First is that with regard to Blackledge, I think what you have to look at is that Blackledge is a broad, fairly broadly held that when you have situations where the habeas petitioner has extrinsically claimed, has claimed that there were kinds of extrinsic promises or promises made outside of the court record, that that's where you then have to look to whether those allegations were probably incredible, frivolous, et cetera, before you then, before the district court is then allowed to narrowly dismiss the petition under 2254. So I do think that Blackledge does broadly apply in this case. And I would even be pleased to, before I conclude my argument, I'd be pleased to make available to the clerk a couple of unpublished minidiscos from this court in which the court has recently applied Blackledge very broadly to require in 2254 cases where you have plea proceedings, there are allegations made off the record regarding off-the-record proceedings that the district court has not been authorized to dismiss unless it's frivolous. Okay. To answer Judge Kleinfeld's question, thank you for your argument. Sure. Both of you in the matter just argued that will be submitted.
judges: Fernandez, Rymer, Kleinfeld